SAMUEL H. BEALL, *vs.* JAMES DEALE AND JAMES DEALE, Jr.
*December*, 1835.

I bequeathed the residue of his personal estate to his children and grand-children, and after expressing his expectation in his will, that E would leave her real estate to his son B, declared, that in case she should devise, or otherwise convey her real estate to any other of his legatees, than the said B and his heirs, that *such legatee* should transfer and convey all his, or her right, title, and interest, in and to the estate so devised by the said E (free from incumbrance) to the said B and his heirs on her decease, or as soon thereafter as could be conveniently done. In case of his or her refusal so to do, then all the estate devised by I to him or her so refusing, should be forfeited, and go to the said B and his heirs for ever. After the death of I, E died, having devised a part of her real estate to one of I's grandsons, who was a minor at the death of both E and B. This grandson received a sum of money under I's will. Upon a bill filed by the administrator *de bonis non* of B, claiming to recover the amount of the legacy received by I's grandson. It was held,

1st. That the death of B, during the minority of the grandson, the devisee of E, did not discharge him from the obligation of performing the condition annexed to his legacy under I's will, upon his arrival at full age.

2nd. The legacy to the grandson under I's will, was a vested legacy, dependent upon a condition subsequent.

3d. That the legacy to B *and* his heirs, in this case, is to be construed as to B *or* his heirs; so that upon B's death, living the grandson, he was bound to convey to B's heirs, or forfeit the legacy under his grandfather's will.

4th. That the grandson was not in default during his minority, by not conveying to B; a conveyance being an act which a minor could not legally perform.

5th. That the duty of conveying the estate which the grandson acquired under I's will to B or his heirs, devolved upon him without a demand.

6th. That the will of I did not present a case of an election to his grandson, to take under the will of his grandfather or E.

7th. That the complainant was entitled to recover the sum received by the grandson as legatee of I, with interest, from the time he arrived at full age, and became able to fulfil the condition imposed by I's will; and that a part of the legacy lost by bad debts during the minority of the grandson, should not be abated from the claim.

APPEAL from the court of CHANCERY.

The appellant as the administrator *de bonis non* of *Benjamin Franklin,* and surviving husband of his widow and executrix, filed the present bill on the 23d of September 1833, to recover of the appellees the amount of a legacy bequeathed by *Jacob Franklin* (who died in 1817) to *James Deale Jr.,* upon a condition which it was alleged, had not been complied with.

The circumstances of the case, and the provisions of the wills, out of which the questions arise, are stated by the learned Judge who delivered the opinion of this court.

*Bland,* Chancellor, on the 28th of December 1833, dismissed the complainant's bill with costs ; being of opinion, that during the life time of *Benjamin Franklin,* the defendant *James Deale, Jr.* not having, by reason of his infancy attained a legal capacity to convey, or to refuse to convey the estate given to him by the will of *Jacob Franklin,* the said estate became by the death of *Benjamin Franklin* absolute and unconditional.

28

From this decree, the complainant appealed to the court of Appeals.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE Judges.

ALEXANDER for the appellant, contended—

1. That the will of *Jacob Franklin* raised a case of election, and if *James Deale, Jr.* had attained his majority before the death of *Benjamin Franklin,* he would have been bound to elect ; nor did the death of *Franklin,* during his minority, relieve him from such necessity, because the intentions of the testator would be fully gratified by a conveyance now, to the heirs of *B. Franklin.* The condition, upon which alone the right to the legacy bequeathed *Deale* by *Jacob Franklin,* was to become absolute, was not the performance of a personal service by the former to *Benjamin* himself, but to him, or his heirs if he should be dead when the time for its performance arrived. The partial impossibility of a condition, does not relieve the party from the entire performance, but *only pro tanto. Coke Lit.* 219 *(a) Lit. Sec.* 352, 353, 354. *Perkins* 817. 3 *Com. Dig. title (condition) (1.)* The condition that he should transfer to *Benjamin* and his heirs, is to be considered in the disjunctive, and the impossibility of performing the one, does not dispense with the other, unless the party who claims the performance, has created the impossibility. 3 *Com. Dig. title (condition) K.* 2. *Thomas vs. Howell,* 1 *Salk.* 170. But *Deale* might have performed the condition during his minority, and his failing to do so, works a forfeiture of the legacy. 4 *Kent's Com.* 121. *Coke Lit.* 246 *(B)* 6 *Petersd. Abr. (condition)* 29. Regarding the will then, as creating merely a condition, the complainant is entitled to a decree. It is not however a condition, but the case of an election, and consequently the intention of the testator possesses a more obligatory force. *Blake vs. Bunbury,* 1 *Ves. Jr.* 522. *Moore vs. Butler,* 2 *Scho. and Lef.* 266. *Long vs. Long,* 5 *Ves. Jr.* 447. *Thelusson vs. Woodford,* 13 *Ves.* 218.

2 *Mad. Ch. Pr.* 48. In a court of Equity, an infant is as much bound to elect as a person of full age. The court will elect for him. 2 *Sch. and Lef.* 266.

5 *Bro. P. C.* 173. *Gretten vs. Haward,* 1 *Swans.* 413. *Reynolds vs. Torin,* 1 *Russel C. C.* 129.

2. The defendants are liable for the whole sum received from the executor of *Jacob Franklin,* with all its accumulations; and they are liable to the personal representative of *Benjamin,* as the right to its receipt accrued in his life time.

MAGRUDER and PINKNEY for the appellees.

1. The estate given to *James Deale, Jr.* is a conditional limitation. It was a vested interest, subject to be divested upon his failure to do a particular act. 1 *Rop.* 523. And as the act could not be performed when he took the estate, he holds it free from the condition. *Burleton vs. Humfrey, Ambler* 266. That by the death of *Benjamin Franklin,* before *Deale* was in a situation to perform the condition, he was exonerated from it altogether.

2. That supposing this not to be the case, the heirs of *Franklin,* and not his personal representative, should take advantage of the breach. It was to them, and not the administrator, that the conveyance was to be made. This has been said to present the case of an election, but it is not so. Before the death of *Miss Battee, Deale* had no certain interest in her estate, and therefore, when he took the legacy given him by *Jacob Franklin,* there was no ground for an election. 2 *Mad. Ch. Pr.* 57. But treating it as the case of election, and the present complainant cannot recover; because he elected to take the legacy, and consequently, the heirs of *Benjamin,* and not his administrator should be before the court.

3. Assuming that *Deale* was bound to convey to the heirs of *Benjamin,* or forfeit his legacy, still the forfeiture cannot be enforced without proof, (of which there is none) that he was called on to do so, and refused.

4. The attempt to prove *laches* in the guardian, has failed, and as he paid the money over to his ward before a demand by the appellant, there can be no recovery, supposing the other objections untenable.

STEPHEN, Judge, delivered the opinion of the court.

The question involved in this appeal, and which this court has to decide, arises upon the following statement of facts. *Jacob Franklin,* by his last will and testament, bequeathed the residue of his personal estate to the children of his daughter *Mary Deale,* and to his own children, *Samuel, Anne, Benjamin,* and *Thomas.* Under this bequest, the executor of *Jacob Franklin* paid to *James Deale* the guardian of *James Deale, Jr.* who is one of the children of the testator's daughter *Mary,* on the 20th of February, 1821, the sum of $706.19. This sum was permitted to accumulate, so that on the 16th of September, 1831, when the ward attained his age of 21 years, it amounted to the sum of $1128.56, and consisted, in part, of cash and stock of the *Farmers Bank of Maryland,* amounting to the sum of $715.39 cents; and half of a note of *William Warfield,* endorsed by *Worthington* and *Anderson,* amounting to the sum of $413.19 cents. And *Jacob Franklin,* the testator in his will, after expressing his expectation that *Mrs. Elizabeth Battee,* would leave her real estate to his son *Benjamin,* declares his will to be, that in case she should "devise or otherwise convey her real estate to any other of his legatees and devisees above named than the said *Benjamin* and his heirs, that such legatee or devisee, legatees or devisees, should transfer and convey all his, her or their right, title and interest in and to the estate, so conveyed or devised to him or them by the said *Elizabeth Battee,* free from incumbrance to the said *Benjamin Franklin* and his heirs, on her decease, or as soon thereafter as could conveniently be done, or otherwise ; in case of his, her, or their refusal so to do, then all the interest, right, title and property, thereby devised and bequeathed to him, her, or them, so refusing, should be forfeited, and should descend and go to his said son *Benja-*

*min Franklin* and his heirs forever." After *Jacob Franklin's* death, Mrs. *Battee* died leaving a will, whereby a part of her real estate was devised to *James Deale, Jr.*, who was at the time of her death a minor, under the age of twenty-one years, and he remained an infant until some time after the death of *Benjamin Franklin*. The appellant is the administrator *de bonis non* of *Benjamin Franklin*, and has filed his bill in Chancery to recover, the legacy bequeathed to *James Deale, Jr.*, by the will of his grandfather. His right to recover to any amount is contested, upon the ground principally, that by the death of *Benjamin Franklin*, during the minority of *James Deale, Jr.*, he was discharged from the performance of the condition imposed by the will of *Jacob Franklin ;* and in relation to the amount for which they shall be held responsible (if responsible at all) the defendants say, that *James Deale*, the guardian, invested a part of the sum which he received from *Jacob Franklin's* executor, in a promissory note of one *William Warfield*, endorsed by *Beale M. Worthington* and *James Anderson*, which has been unproductive by the subsequent insolvency of *Warfield* and *Worthington ;* and the failure of the holder to give notice of the non-payment of the note, to *Anderson* the last endorser ; and under the circumstances, it is insisted, that neither guardian nor ward can be made answerable for the sum thus lost. It appears by the answer of the guardian, that the notice of non-payment to *Anderson* the endorser, was delivered by the agent of the guardian to a certain *James Purdy*, a neighbour of said *Anderson*, who promised to deliver it on the same day to said *Anderson*, or leave it at his place of abode ; but who in fact delivered it to a slave of said *Anderson*, who the said *Purdy* met on the road ; and that not being able to prove the delivery of the notice to *Anderson* the indorser, he was nonsuited, in the action instituted against him. The Chancellor dismissed the complainant's bill, on the ground, that *Benjamin Franklin* having died during the minority of *James Deale*, the legatee, and before he had a legal capacity to convey or to refuse to convey the legacy given to him by the will of his

grandfather became absolute; and that the complainant was not entitled to sustain his bill, for the recovery of the said legacy. In this opinion of the Chancellor we cannot concur. We do not think that the death of *Benjamin Franklin* during the minority of *James Deale* the legatee, discharged him from the obligation of performing the condition annexed to his legacy; we think it was a vested legacy, depending upon a condition subsequent, which he was bound to perform, and that the death of *Benjamin Franklin* before he arrived to the age of twenty-one years, was no excuse for its non-performance, and did not render his legacy absolute. We think that the principle is well established upon authority, that in such a case the copulative "*and*" is to be taken disjunctively, and that the true construction of the will is, that upon the contingency of *Benjamin's* death, before the legatee was legally competent, to convey the estate devised to him by the will of *Elizabeth Battee* to *Benjamin* and his heirs, he was bound to convey the same to his heirs. We think, that the heirs of *Benjamin Franklin*, as well as *Benjamin* himself, were objects of the testator's bounty and benevolence, and that if *Benjamin* were dead, when *James Deale* arrived at age, and acquired a legal capacity to convey, he was bound to convey to the heirs of *Benjamin*, or that he would forfeit the legacy bequeathed to him by the will of his grandfather. The doctrine appears to be well established by the most respectable authorities, that where an estate is given to an infant, defeasible upon the non-performance of a condition subsequent, the infant is bound to perform the condition, or the estate will be defeated; as if an estate be given to an infant to be forfeited in case he marries without the consent of the testator's executor; in such case, if the infant marries without such consent, the estate is forfeited; because the infant is competent to enter into the contract of matrimony, during his minority; and may consequently be guilty of a breach of the condition, before he attains the age of legal majority. See 2 *Vernon*, 336, where it is said, "a male infant is competent to enter into the matrimonial contract at

the age of fourteen years, and a female at the age of twelve."
But where the condition subsequent cannot be performed,
before the infant's legal incapacity ceases, there, the forfei-
ture does not attach during his minority, because there can be
no breach of the condition, until the infant acquires a legal
capacity to perform it. Wherever therefore, the authorities
say, that an infant is bound to perform a condition subse-
quent annexed to his estate, they mean that he is bound to
perform, during his minority, only such acts, as the law
authorizes and enables him to perform. In 1st *Fonb.* 89, 90,
the principle is stated to be, that "where an estate is given
to an infant upon a condition, such acts as an infant can per-
form, must be done by him, and infancy in such case is no
excuse." It is true, it is said in the same book 399, that,
"conditions subsequent, that are to defeat an estate, are not
favoured in law; and if the condition becomes impossible by
the act of God, the estate shall not be defeated or forfeited."
But the question still recurs, was this a condition the perfor-
mance of which became impossible by the act of God; we
think it was not, as the authorities hereafter to be referred to,
will, we think, clearly demonstrate. So in 2 Vernon, 343,
after stating that an infant may by his *prochein-ami*, call his
guardian to an account during his minority, and that a stran-
ger who enters and receives the profits of an infant's estate,
shall in the consideration of a court of equity be looked upon
as a trustee for the infant, the lord chancellor says, "but the
court never pretended to change the nature of an infant's
estate, or to make that absolute, which was defeasible. Where
an estate is given to an infant upon a condition, such act as
an infant can perform, must be done by him, and infancy in
such case is no excuse." According to the principle estab-
lished by this decision, *James Deale* was not in default during
his minority, by not conveying to *Benjamin ;* but upon obtain-
ing his age, if *Benjamin Franklin* was then dead, we think
he was bound to comply with the directions of the will of
*Jacob Franklin,* and convey the estate he acquired under the
will of *Elizabeth Battee,* to the heirs of *Benjamin,* or forfeit

the legacy given to him by the will of *Jacob*. In 3rd *Com. Dig.* 114, it is said, "If a condition be to enfeoff two before such a day, and one dies, he ought to enfeoff the other ; or to enfeoff A, and his heirs, and A dies, he ought to enfeoff the heir ; for "*and*" shall be taken as a disjunctive "*or*." So in 3rd *Mod. Rep.* 235, it is said, "If a condition be, to make an assurance of land to the obligee and his heirs, and the obligee dies before the assurance made, yet it shall be made to the heir, for this copulative is a disjunctive." So in 2 *Danver's Abrid.* 85, it is said, "If a condition of an obligation be, to make an assurance of certain land to the obligee, and his heirs, and after the obligee dies, yet he ought to make the assurance to his heir for this copulative, *and his heirs*, shall have the signification of a disjunctive." We therefore think, that it clearly appears from these authorities, that *James Deale* was not discharged from the performance of the condition annexed to his legacy by the death of *Benjamin Franklin*, during his minority ; but that on his death, upon his attaining the age of legal capacity to make the conveyance, he was bound to transfer the interest he derived under the will of *Elizabeth Battee*, to the heirs of *Benjamin*.

The next question to be considered and decided is, whether by the true construction of the will of *Jacob Franklin*, this duty was devolved upon him, without a demand from the heirs of *Benjamin ;* or whether he was not in default until such demand was made, and he had refused to comply with such demand ? In giving a judicial construction to the will of a testator, it is well settled that the intention of the testator, is the polar star by which courts of justice are to be governed ; and that such intention is always to prevail, where it does not conflict with some established principle of law. What then was the intention of the testator, fairly to be inferred from a careful examination of his will ? It was manifestly his intention, that *James Deale* should not take the legacy bequeathed to him by his will, and also the land, which might be devised to him, by the will of *Elizabeth Battee ;* but that on her death, or as soon thereafter as it conve-

niently could be done, he should convey to *Benjamin Frank-lin* and his heirs, any interest which he might take under the will of *Elizabeth Battee.* We think it clear from the language of his will, that if he could have ascertained with certainty, when his will was made, that *Elizabeth Battee* would have devised to *James Deale,* the estate she gave him by her will, the legacy bequeathed to *James Deale* would never have been given to him. In case of the occurrence of that event, he appears to have been particularly solicitous, that the legacy given to *James,* should cease to take effect; unless immediately on her death, or as soon as it could conveniently be done, *James* should convey to *Benjamin* and his heirs, the estate devised to him by the will of *Elizabeth Battee.* It is true he says, that on his refusal to convey the legacy should be forfeited, and, in the language of the will, should descend to *Benjamin.* But how refuse is the question? Was it to be upon a demand made by the heirs of *Benjamin,* or was it upon his refusal to convey, according to the directions of his will, on the death of *Elizabeth Battee,* or as soon as it conveniently could be done? We think the latter construction is the correct one. He knew that *James Deale* was an infant, and might remain an infant, at the death of *Elizabeth Battee,* therefore the conveyance was directed to be made at her death if practicable, or as soon thereafter as it could legally or conveniently be done. The will says nothing about any demand being made by *Benjamin Franklin* or his heirs; but only provides, if he refuses to convey, that the legacy is to be forfeited; and it may be asked, does the word refuse, necessarily imply such a demand—we think it does not, but that when he speaks of a refusal to convey, he meant, and only meant his refusal to convey, according to the directions of his will; that is to say, on the death of *Elizabeth Battee,* or as soon thereafter as it could conveniently be done. According to *Johnson* and *Webster,* the word "refuse" may import not only the refusal of a thing demanded, but signifies also, "not to comply," and according to the true construction of *Jacob Franklin's* will, may well mean a non-compliance with the condition to con-

vey, thereby imposed.   Upon the whole we think, that no demand was necessary, on the part of *Benjamin Franklin's* heirs, and that the bill filed by the personal representative of *Benjamin Franklin*, claiming the legacy as forfeited, may be sustained without the proof of such a demand.   We also think, the fact of *Elizabeth Battee* having devised only a part of her real estate to *James Deale* does not exempt him from the obligation of complying with the condition imposed by the will of his grandfather.   It was manifestly the intention of the testator, that none of his devisees or legatees should share the bounty of *Elizabeth Battee*, in the disposition of her real estate, other than his son *Benjamin*;  for he says, if contrary to present expectation, she should devise or otherwise convey her real estate to any other of his legatees or devisees than *Benjamin ;*  such devisee or legatee was to convey all his right, title and interest, so acquired, to *Benjamin* and his heirs, or forfeit his legacy ;  so that, no matter what the interest acquired in the real estate of *E. Battee* might be, the will imposed an imperative duty, to convey all such interest, or incur the forfeiture ;  nor do we think that the obligation to make such transfer is annihilated, or in any degree impaired, by that provision in the will of *Elizabeth Battee*, which directs *Benjamin Franklin*, to convey to *James Deale* and his heirs, his undivided moiety in the land devised by *Elizabeth* to *James.*   The will of *Jacob Franklin* only making it the duty of *James*, to convey to *Benjamin* any real estate, to which he might derive title, from *Elizabeth Battee*, either by deed or last will and testament ;  he was only bound to convey any interest he might so acquire in her real estate, and not an interest acquired in the estate of any other person.  We do not think, that the will of *Jacob Franklin*, presents a case of election ;  because at his death, *James Deale* had no such interest in the real estate of *Elizabeth Battee*, as the will of *Jacob Franklin* could operate upon, so as to create the necessity of making an election.   It was a bare possibility, uncoupled with any interest whatever.

The question next to be considered is, to what amount the

complainant's claim in this case can be sustained. The bill seeks to recover from *James Deale, Jr.* and his guardian, or one of them, the whole amount of the interest derived by *James* under the will of his grandfather; not only the sum actually received, but that which was loaned to *Warfield*, and ultimately lost by his insolvency, and the irresponsibility of his endorser, who was discharged by the inability to prove the necessary notice of non-payment by the drawer.

We think, however, that the complainant is entitled to recover only to the extent of the principal sum left him by the will of his grandfather, with interest thereon from the time the forfeiture accrued, by the non-conveyance of his interest in the estate devised to him by the will of *Elizabeth Battee*.

DECREE REVERSED *with costs in both courts, and decreed by this court, that the defendant James Deale, Jr. pay the complainant, the amount received by him of his guardian, with interest from the time he attained his majority.*